Jones, J.
 

 The sole question presented is whether under the pleaded facts challenged by the demurrer, Section 21 of the building code ordinance is constitutional and is a proper and legitimate exercise of the police power; or whether the ordinance is so arbitrary and unreasonable as to abridge the rights of the defendants in their property in contravention of constitutional guaranties given them by the Fourteenth Amendment of the Federal Constitution and by Article I, Section 1 of the Ohio Constitution. When the exercise of police power by municipal authorities is challenged by a property owner who seeks to attack the legislation because it invades his property rights, the rule governing such cases has been frequently
 
 *270
 
 stated by our state and federal courts. In
 
 City of Dayton
 
 v.
 
 S. S. Kresge Co.,
 
 114 Ohio St., 624, 151 N. E., 775, 53 A. L. R., 916, we declared that the determination whether the regulations were reasonably necessary for the safety of the public was committed in the first instance, to the legislative body of the municipality, and that unless it was clear that such regulations were unreasonable or arbitrary or had no substantial relation to the public health, safety, morals or general welfare, the courts would uphold their validity. Conversely, and as a necessary corollary, it follows of course that if the so-called regulations are arbitrary and have no substantial relation to the public health, safety, or general welfare, the courts will hold them invalid. In cases involving zoning police regulations, the United States Supreme Court stated the rule as follows: “The governmental power to interfere by zoning regulations with the general rights of the landowner by restricting the character of his use, is not unlimited, and other questions aside, such restriction cannot be imposed if it does not bear a substantial relation to the public health, safety, morals, or general welfare.”
 
 Nectow
 
 v.
 
 City of Cambridge,
 
 277 U. S., 183, 72 L. Ed., 842, 48 S. Ct., 447. In
 
 Washington, ex rel. Seattle Title Trust Co., Trustee,
 
 v.
 
 Roberge, Supt. of Bldgs.,
 
 278 U. S., 116, 73 L. Ed., 210, 86 A. L. R., 654, 49 S. Ct., 50, Mr. Justice Butler, speaking for the court and citing many authorities in support of the foregoing principle, said: “Legislatures may not, under the guise of the police power, impose restrictions that are unnecessary and unreasonable upon the use of private property or the pursuit of useful activities.” See also
 
 Thomas Cusack Co.
 
 v.
 
 City of Chicago,
 
 242 U. S., 526, 61 L. Ed., 472, 37 S. Ct., 190, L. R. A., 1918A, 136, Ann. Cas., 1917C, 594.
 

 The petition challenged by the demurrer is noted more for what it omits to plead than for what it alleges. It does not appear from the petition whether
 
 *271
 
 this fence exceeded the ordinance height by one inch or more, and it does not appear whether it was a board, wire or hedge fence. The plaintiff in error, Wondrak, defends the reasonableness of the height of a three and one-half foot fence as an absolute standard of measure and asserts that if such height is exceeded in the least it would tend to affect injuriously the public health or welfare of the community. This does not follow. We are wholly unable to discern how a fence if but little higher than three and one-half feet would affect the health of the public.
 

 In support of the validity of the ordinance, it is suggested that a fence just 20 feet distant from a residence building prevents the access of light and air and the passage of fire apparatus in case of fire. But the ordinance permits the erection of a fence of say a few inches beyond the 20-foot limit, so the suggestions advanced touching the reasonableness of the regulations are not very persuasive.
 

 This ordinance prohibits the erection of any fence, whatever its character, if it be more than three and one-half feet in height. If the Kelleys should construct such a prohibited fence on the division line and in the rear of their premises between their and their neighbor’s back yards, the only disadvantage their neighbors might suffer, so far as we can observe, would be the aesthetic disadvantage of being unable to possess a better vision of the rear portion of Kelleys’ lot; but this aesthetic value might be somewhat lessened if such vision should be obscured by garbage receptacles or by the Kelleys’ family washing hanging in their back yard. However, aesthetic reasons alone, unrelated to the requirements of the public health, safety or public welfare, will not justify the exercise of the police power.
 
 Pritz
 
 v.
 
 Messer,
 
 112 Ohio St., 628, 149 N. E., 30, and cases cited.
 

 We do not mean to hold that under some circumstances, municipalities may not regulate the height of
 
 *272
 
 fences if the needs of public health and safety require such regulation. We can conceive of cases where municipal councils could regulate their height when they are located so near to street intersections as to endanger the traveling public. Such a regulation would be in the interest of public safety so that drivers of converging vehicles might avoid collision at such intersections. The ordinance here under consideration has no real or substantial relation to the needs of the public health, morals, welfare or public safety, and it is unreasonable and arbitrary in character. It unduly invades the right which the property owner has in his property in contravention of the constitutional provisions heretofore referred to. For the reasons stated, the judgment of the Court of Appeals is affirmed.
 

 Judgment affirmed.
 

 Weygandt, C. J., Stephenson, Williams, Matthias, Day and Zimmerman, JJ., concur.