Barbara Lynn DAVIS,
Plaintiff-Appellant,

v.

BLOUNT COUNTY BEER BOARD,
Defendant-Appellee.

Supreme Court of Tennessee.

Sept. 14, 1981.

F. D. Gibson, III, Maryville, for plaintiff-appellant.

David T. Black, Maryville, for defendant-appellee.

William M. Leech, Jr., Atty. Gen., Kate Eyler, Asst. Atty. Gen., Nashville, for intervenor.

## OPINION

BROCK, Justice.

The plaintiff, Barbara Lynn Davis, seeks a permit for the sale of beer for off-the-premises consumption at her Pantry Food Store at Louisville in Blount County, Tennessee. The Blount County Beer Board denied her application solely upon the ground that Fred Reagan, the owner of a residential dwelling house located within 300 feet of the plaintiff's store, objected to issuance of the permit. It is stipulated that the plaintiff met every requirement of the law for the issuance of the permit. Upon appeal, the Circuit Court affirmed the action of the Board, and plaintiff has appealed to this Court.

The denial of the permit by the Board and by the Circuit Court was in compliance with a resolution adopted by the Blount County Quarterly Court that, in turn, was authorized by T.C.A., § 57–5–105(f).[1]

The resolution adopted by the Blount County Quarterly Court (legislative body) and committed to the Blount County Beer Board for enforcement is as follows:

"Blount County henceforth by this resolution herewith forbids the sale of beer within 300 feet of a residential dwelling, measured from building to building, *provided the owner of the residence appears in person before the county beer board and objects to the issuance of such permit or license.* This provision shall not apply to locations where beer permits or licenses have been issued prior to December 15, 1975, nor shall this provision apply to an application for a change in the licensee or permittee at such location." (Emphasis added.)

As she did in the Circuit Court, plaintiff contends in this Court that the resolution and the provision of the statute upon which it is based are unconstitutional under the Federal and State Constitutions because they deny to the plaintiff equal protection of the law, deprive the plaintiff of liberty and property without due process of law and constitute an unlawful delegation of legislative power to private individuals.

Because the constitutionality of the State statute was placed at issue, the Attorney General was notified and was permitted to intervene in the case.

Many cases have been decided in this country dealing with the validity of ordinances governing the issuance of licenses or permits for the sale of alcoholic beverages and containing so called "consent" or "remonstrance" provisions such as the one emphasized above in the instant ordinance. There have been even more cases involving similar provisions in zoning ordinances. Most, if not all, such ordinances dealing with the issuance of permits or licenses to sell intoxicating liquors have been upheld against constitutional attack. 45 Am.Jur.2d *Intoxicating Liquors* § 156 (1969). Cases dealing with such ordinances in the zoning field have reached divergent results. 82 Am.Jur.2d *Zoning and Planning* § 105 (1976); 82 Am.Jur.2d *Zoning and Planning* § 265 (1976); 21 A.L.R.2d 551; 75 A.L.R.2d 168; 50 A.L.R.3d 837.

■ The constitutional infirmities most often asserted against such ordinances are: (1) they constitute an illegal delegation of legislative power to private individuals, (2) they deny due process of law and (3) they deny the equal protection of the laws. That the ordinance constitutes an unlawful delegation of legislative power to an individual or individuals is most often asserted and this, of course, has been the ground most often sustained in striking down such ordinances. The Supreme Court of New Hampshire, in attempting to understand

---

1. The statute is as follows:

"Class 'A' counties, by resolution of their county legislative body, may forbid the sale of beer within three hundred (300) feet of a residential dwelling, measured from building to building, provided the owner of the residential dwelling appears in person before the county beer board and objects to the issuance of such permit or license. This provision shall apply only to land which is unzoned and shall not apply to locations where beer permits or licenses have been issued prior to the date of adoption of such a resolution by the county legislative body, or to an application for a change in the licensee or permittee at such locations."

and explain the divergent results reached by the courts in deciding the validity of ordinances of apparently equal operation, made the following observation:

"We come now to the nub of the plaintiff's case, which is that the consent requirement 'is illegal and unconstitutional under the State and Federal courts as an unlawful delegation of legislative power to private individuals.' From the welter of decisions upon this subject—not all of which seem reconcilable (see Annotation 21 A.L.R.2d 551)—the majority rule appears reasonably clear. It is that if the effect of a consent provision is to legislate it is invalid, but if it serves merely to permit the waiver of a restriction created by the legislative authority of the municipality, which has provided for such a waiver, it is upheld. (Citations omitted.)" *Robwood Advertising Assoc., Inc. v. City of Nashua*, 102 N.H. 215, 153 A.2d 787, 789 (1959).

A similar statement of the rule was expressed in *Myers v. Fortunato*, 12 Del.Ch. 374, 110 A. 847 (1920) and in *Cross v. Bilett*, 122 Colo. 278, 221 P.2d 923 (1950). The *Myers* case involved an ordinance prohibiting the erection of a public garage in a residential district within 40 feet of the building line of adjoining property owners unless with their written consent. This provision for consent was held to be valid and not a delegation of legislative power. The court said:

"The law is complete in itself wholly independent of what any one may do or say, but if those whom the law was designed to protect consent that the thing prohibited may be done in a particular case, the prohibition is modified to that extent. The validity of the law does not depend on the acts of such persons, and is entirely unlike those ordinances that are not effective until the property owners act, as in the building line case [this is an apparent reference to *Eubank v. Richmond*, 226 U.S. 137, 33 S.Ct. 76, 57 L.Ed. 156 (1912)], and whose acts alone give to the ordinance the force and effect of law. "If the existence of the law depends upon the vote or act of the people it is an unconstitutional delegation of legislative power, but if the law is complete in and of itself the fact that it provides for the removal or modification of its prohibition by the act of those most affected thereby, does not make it a delegation of legislative power." 110 A. at 847–48.

The leading case holding that a "consent" provision of a zoning ordinance was unconstitutional was *Eubank v. Richmond, supra.* The ordinance in that case provided:

" 'That whenever the owners of two thirds of property abutting on any street shall, in writing, request the committee on streets to establish a building line on the side of the square on which their property fronts, the said committee shall establish such line....' " 33 S.Ct. at 76.

It was held that the ordinance was void because it left no discretion in the committee whether the building line should or should not be established, but delegated full authority to two thirds of the property owners with the result that part of the owners fronting on a block determined the extent and kind of use that other owners should make of their lots, no standard being provided by which the power thus given was to be exercised. Thus, it offended the due process of law and equal protection clauses of the United States Constitution. *See also, Washington ex rel. Seattle Title Trust Co. v. Roberge*, 278 U.S. 116, 49 S.Ct. 50, 73 L.Ed. 210 (1928).

The leading case holding that a "consent" provision of a zoning ordinance was valid is *Cusack Company v. Chicago*, 242 U.S. 526, 37 S.Ct. 190, 61 L.Ed. 472 (1917). The ordinance in *Cusack* required that before any billboard above the size specified might be erected in any block in which one-half of the buildings were used exclusively for residence purposes, the owners of a majority of the frontage of the property on both sides of the street in such blocks should consent in writing thereto. In holding that the ordinance was valid, the court said:

"A sufficient distinction between the ordinance there considered [in *Eubank v. Richmond, supra*] and the one at bar is

plain. The former left the establishment of the building line untouched until the lot owners should act, and then made the street committee the mere automatic register of that action, and gave to it the effect of law. The ordinance in the case at bar absolutely prohibits the erection of any billboards in the blocks designated, but permits this prohibition to be modified with the consent of the persons who are to be most affected by such modification. The one ordinance permits two thirds of the lot owners to impose restrictions upon the other property in the block, while the other permits one half of the lot owners to remove a restriction from the other property owners. This is not a delegation of legislative power, but is, as we have seen, a familiar provision affecting the enforcement of laws and ordinances." 37 S.Ct. at 192.

Considering the Blount County resolution (ordinance) in light of the foregoing authorities, we conclude that it is a lawful enactment. The protesting owner of a residence located within 300 feet of the proposed beer outlet exercises no legislative power; he merely protests or fails to protest. He can neither grant nor deny a permit for the sale of beer. The permits must issue to an otherwise qualified applicant unless the owner of a residence within 300 feet appears in person and protests. The effect of a protest is to deny the permit, but that effect is derived from the legislative enactment and the ordinance passed pursuant thereto, not from the residence owner.

■■■ That the State and its political subdivisions, when properly authorized, may restrict the geographic location of commercial enterprises is well settled. *Williamson v. Lee Optical of Oklahoma*, 348 U.S. 483, 491, 75 S.Ct. 461, 466, 99 L.Ed. 563 (1955). The power to restrict the location of establishments for the sale of intoxicating beverages and to require that they be located a particular distance from the property of others has been generally recognized. *State v. Barringer*, 110 N.C. 525, 14 S.E. 781 (1892); *Beacon Liquors v. Martin*, 279 Ky. 468, 131 S.W.2d 446 (1939). The holdings of

the cases dealing with this issue are well summarized as follows:

"A state, in the exercise of its police power, may enact a valid law forbidding the issuance of licenses for the sale of intoxicating liquor in a particular locality, such as a law prohibiting sales within specified distances of other establishments selling intoxicating liquor, or of churches, schools, and colleges, as well as other buildings, institutions, and grounds, public and private, and similar power may be conferred on municipalities. Such laws are generally regarded as constitutional, notwithstanding the discrimination against the locality, the primary object being to remove the atmosphere of an establishment where intoxicating liquors are sold a reasonable distance from institutions where the milieu of such places is considered inimical to the best interests and welfare of those attending or present at such institutions, and they should be liberally construed to preserve the rights of the institutions named therein." 45 Am.Jur.2d *Intoxicating Liquors* § 140 (1969) at 585.

It has been recognized that the needs and desires of those in the locality particularly affected by an establishment that sells intoxicating beverages are important and that the existence of such an establishment in close proximity to the property of others may adversely affect the value of their property. Thus, it has been held, almost without exception, that an ordinance or statute which makes the granting of a liquor or beer license conditional upon the consent of, or the absence of an objection by, the residents or property owners within a certain distance of the proposed establishment is a constitutional enactment.

"Such a provision does not unlawfully delegate the power to grant licenses or make an arbitrary or unjust discrimination between applicants; nor is it objectionable as conferring arbitrary powers on property owners, or as denying equal protection of the laws." 45 Am.Jur.2d *Intoxicating Liquors* § 156 (1969) at 599.

We conclude that the Blount County resolution and T.C.A., § 57–5–105(f), from which the ordinance derives its authority, are valid enactments. They are not unlawful delegations of legislative power to private individuals. *Gatlinburg Beer Regulation Committee v. Ogle*, 185 Tenn. 482, 206 S.W.2d 891 (1947); *In re Kaye*, 11 Alaska 556 (Dist.Ct.1948); *Swift v. People*, 162 Ill. 534, 44 N.E. 528 (1896); *City of New Orleans v. Smythe*, 116 La. 685, 41 So. 33 (1906); *Crowley v. Christensen*, 137 U.S. 86, 11 S.Ct. 13, 34 L.Ed. 620 (1890); *State v. Gerhardt*, 145 Ind. 439, 44 N.E. 469 (1896).

■■■ In addition to her claim that the ordinance and statute constitute an unlawful delegation of legislative power to private citizens, the appellant also asserts that those enactments violate her rights under the due process and the equal protection provisions of the State and Federal Constitutions. We have examined these claims and find that they, too, are without merit. There is no denial of due process because this regulation bears a reasonable relation to a permissible legislative objective, as we have hereinabove pointed out. Likewise, there is no denial of equal protection of the laws because the regulation has been applied equally with respect to all persons seeking permits to sell beer at establishments located within 300 feet of a protesting owner of a residence in Blount County.

The decree of the Circuit Court is affirmed and costs are taxed against the appellant and surety.

HARBISON, C. J., and FONES, COOPER and DROWOTA, JJ., concur.