SUPREME MALT PRODUCTS CO., INC. *vs.* ALCOHOLIC
BEVERAGES CONTROL COMMISSION
(and two companion cases[1]).

Suffolk.    January 3, 1956. — April 11, 1956.

Present: QUA, C.J., RONAN, SPALDING, WILLIAMS, & COUNIHAN, JJ.

*Alcoholic Liquors*, Price fixing. *Constitutional Law*, Police power, Equal protection of laws, Delegation of powers, Alcoholic liquors. *Statute*, Validity. *Evidence*, Opinion: expert; Relevancy and materiality.

G. L. (Ter. Ed.) c. 138, § 25C, inserted by St. 1952, c. 385, and c. 567, § 1, in providing for establishing minimum prices for sale at retail of alcoholic liquors in package stores for "off-premises" consumption, and forbidding sales at less than such prices, is a proper exercise of the police power and is not unconstitutional as discriminatory or as constituting an improper delegation of legislative power. [61–63]

A statute respecting retail prices of certain goods was not rendered invalid by the mere fact that its enactment was favored by an association representing a large number of retail stores dealing in such goods. [63]

In proceedings begun in 1953 involving the validity of G. L. (Ter. Ed.) c. 138, § 25C, inserted by St. 1952, c. 385, and c. 567, § 1, respecting the establishment of minimum prices for sale at retail of alcoholic liquors in package stores, it was proper to exclude the opinion of a psychiatrist that liquor prices had nothing to do with alcoholism and to exclude statistics concerning the years 1934 through 1954 offered to show that violations of the liquor laws through sales to minors and sales outside legal hours had not been reduced by § 25C. [63–64]

---

[1] The companion cases are Benjamin D. Soble *vs.* Alcoholic Beverages Control Commission and Macy's Liquor Inc. *vs.* Alcoholic Beverages Control Commission.

BILL IN EQUITY, filed in the Superior Court on August 21, 1953.

Two PETITIONS for writs of certiorari, filed in that court on August 18, 1953.

Massachusetts Package Stores Association, Inc., was permitted to intervene in all the cases.

The cases were reported by *Good, J.*

*James D. St. Clair*, for the plaintiff.

*Julius H. Soble*, for the petitioners.

*Harris A. Reynolds*, Assistant Attorney General, for the alcoholic beverages control commission.

*John F. X. Gaquin*, (*Vincent F. Leahy* with him,) for the intervener.

RONAN, J. The first case is a bill in equity by a corporation, conducting a package store, so called, where intoxicating liquor is sold not to be consumed on the premises, brought against the defendants who comprise the alcoholic beverages control commission, seeking to enjoin the enforcement of a six day suspension of its license imposed by the commission upon the plaintiff as a penalty for selling a bottle of whiskey below the price fixed in accordance with G. L. (Ter. Ed.) c. 138, § 25C, inserted by St. 1952, c. 385, and c. 567, § 1. The remaining two cases are petitions for writs of certiorari to quash a similar penalty imposed upon the petitioners each of whom maintained a package store and is also alleged to have violated said § 25C. The cases were consolidated for trial in the Superior Court. They were presented to the judge upon statements of agreed facts. The plaintiff and the petitioners also saved exceptions to the exclusion of evidence. The trial judge reported the cases without decision to this court.

General Laws (Ter. Ed.) c. 138, § 25C, inserted by St. 1952, c. 385, and c. 567, § 1, requires the owner, manufacturer or wholesaler of a brand or trade name to file with the commission at different times during the year a schedule of prices to be charged for different brands or trade named intoxicating liquors but no filing of schedules "shall take effect unless within thirty days thereafter the commission has ap-

proved the said prices as not being excessive, inadequate, or unfairly discriminatory." Provisions are made for the display of the schedules where the goods are sold and also for penalties for a violation of the statute.

There is not much doubt that the plaintiff and the petitioners sold a small quantity of whiskey below the "minimum consumer resale price list" approved by the commission and that each seller was found guilty by the commission after a hearing and the license of each was ordered suspended for six days. The immediate object of these present proceedings was to avoid the suspension of these licenses.

It is first contended that the statute, said § 25C, providing for the fixing of the minimum consumer resale prices for alcoholic beverages, is contrary to both the Federal and the State Constitutions.

A statute is not to be declared void as contrary to our Constitution "unless it is impossible by any reasonable construction to interpret its provisions in harmony with the Constitution," *Perkins* v. *Westwood,* 226 Mass. 268, 271, *Lowell Co-operative Bank* v. *Co-operative Central Bank,* 287 Mass. 338, 343, *Howes Brothers Co.* v. *Unemployment Compensation Commission,* 296 Mass. 275, 284; and one attempting to show that a statute is contrary to the Federal Constitution has a similar burden. "Every possible presumption is in favor of the validity of a statute, and this continues until the contrary is shown beyond a rational doubt." *Sinking-Fund Cases,* 99 U. S. 700, 718. *Powell* v. *Pennsylvania,* 127 U. S. 678. *Rast* v. *Van Deman & Lewis Co.* 240 U. S. 342, 357. The liquor traffic has long been recognized as a source of danger to the public welfare, health and safety, and regulations governing the conduct of the business and frequently going to the extent of prohibiting it altogether have been sustained. *Beer Co.* v. *Massachusetts,* 97 U. S. 25, 32. *Mugler* v. *Kansas,* 123 U. S. 623. *Crowley* v. *Christensen,* 137 U. S. 86, 91. *Purity Extract & Tonic Co.* v. *Lynch,* 226 U. S. 192. *Clark Distilling Co.* v. *Western Maryland Railway,* 242 U. S. 311, 320. *Seaboard Air Line Railway* v. *North Carolina,* 245 U. S. 298. *Crane* v. *Camp-*

*bell,* 245 U. S. 304. *Samuels* v. *McCurdy,* 267 U. S. 188.
*Ziffrin, Inc.* v. *Reeves,* 308 U. S. 132. *Bacardi Corp. of
America* v. *Domenech,* 311 U. S. 150.

The power of the State to protect itself by an exercise
of the police power is commensurate with the nature of the
evil which it seeks to eliminate. If the Legislature came to
the conclusion that the establishment of retail prices for
customers of package stores would tend to promote temper-
ance, to stabilize the package store business, to avoid price
wars and cut throat competition, and to instill more ob-
servance for the law in those engaged in the business and
would better protect the public, we cannot say its belief was
so irrational that none of these objects would result from the
passage of the act.

A price fixing device has been recently used to control the
so called package store business. *Gipson* v. *Morley,* 217 Ark.
560. *Schwartz* v. *Kelly,* 140 Conn. 176. *Reeves* v. *Simons,*
289 Ky. 793. *Gaine* v. *Burnett,* 122 N. J. L. 39. It was held
in *Gipson* v. *Morley, supra,* that the fixing of prices for the
retail sales of intoxicating liquor was a valid exercise of the
police power and did not violate any constitutional pro-
visions guaranteeing equality and due process and forbidding
special privileges; and in *Schwartz* v. *Kelly,* 140 Conn. 176,
that price fixing is recognized as a method reasonably
adapted to promote temperance, to avoid price wars, to
stabilize the liquor industry, and to encourage the ob-
servance of the liquor law by those engaged in that business.
The statute in that case was within the police power. After
answering an argument that the statute gave special
benefit to the retail dealer, and after citing cases in which
price fixing was sustained, it was decided in *Reeves* v.
*Simons, supra,* that the statute did not offend the Consti-
tution. The statute fixing a maximum price for beer sup-
plied to a retailer by the county liquor control board was
held not to be unconstitutional in *Fowler* v. *Harris,* 174 Md.
398. It was said in *Gaine* v. *Burnett,* 122 N. J. L. 39, 43,
"Fixing the price, at which liquor is to be sold, is an ancient
method to prevent abuse in the use of a commodity of much

social disadvantage. . . . Nothing can promote greater fairness in the liquor trade than to fix the price of sale. All dealers and customers stand precisely on the same footing."

We do not agree that sponsorship of the statute now § 25C adversely affects it. The fact, as alleged in the intervening petition, that legislation prohibiting price cutting was sponsored by the corporate intervener, which was said to represent twelve hundred package stores, did not render the statute null and void if it was otherwise valid. This statute was derived from St. 1952, c. 385 and c. 567, which according to their substantially similar titles were enacted for the purpose of eliminating "certain trade abuses in the sale and distribution of alcoholic beverages." The mere fact that members of a corporation are in favor of the passage of a statute and nothing more is shown does not invalidate the measure. See *Simon* v. *Needham*, 311 Mass. 560, 566–567. *Caires* v. *Building Commissioner of Hingham*, 323 Mass. 589, 595–596.

The approval of prices by the commission is not shown to be discriminatory. Those selling alcoholic beverages at retail not to be drunk on the premises comprise a separate and distinct branch of the liquor business. They are required to charge the same price for the same brand of liquor throughout the Commonwealth. The subject matter is within the police power of the Commonwealth and the imposition of a uniform price cannot be said to be discriminatory.

There is nothing in the contention that there has been an unlawful delegation of legislative power to the commission. The Legislature set out the general policy and also considerable detail which was sufficient in guiding the commission in maintaining established prices for retail sales of alcoholic beverages. *Commonwealth* v. *Hudson*, 315 Mass. 335, 341, and cases cited.

The plaintiff and the petitioners offered evidence by a qualified psychiatrist tending to show that the price at which alcohol or bottled liquors can be purchased at retail

liquor stores has nothing to do with the prevalence of alcoholism or alcoholism as a disease in any individual.

We think the judge was right in excluding the opinion of the psychiatrist. The part which the price of an article plays in its retail sale is a matter of common experience. Indeed, each of the sales now before us was effected by the plaintiff or the petitioners only after a reduction was made from the established price. See *Commonwealth* v. *Isenstadt,* 318 Mass. 543, 559–560; *Attorney General* v. *"Forever Amber,"* 323 Mass. 302.

Neither was there any error in the exclusion of the chart offered by the plaintiff and the petitioners. This chart contained statistics compiled by the commission showing cases before local licensing boards and the courts for the years 1934 through 1954 involving sales to minors and sales outside legal hours. It was offered, presumably, to show that such violations were not reduced by the statute. A sufficient answer is that the statute, § 25C, was operative about a year before the present proceedings were commenced and that would seem to be too short a time to test its effectiveness. Furthermore, the statute is not especially directed against sales to minors and sales after hours but aims at a general improvement of the liquor business. The chart with the other evidence falls short of showing that the statute is invalid.

It follows that a final decree is to be entered dismissing the bill in equity and that judgments are to be entered dismissing the petitions for writs of certiorari.

*So ordered.*