**UNITED STATES of America**
v.
**CONNECTICUT PACKAGE STORES ASSOCIATION, INC., et al.**
**Crim. No. 10580.**

United States District Court
D. Connecticut.
May 29, 1962.

---

Department of Justice, Anti-Trust Division, by Richard Shanley, Joseph T. Maioriello, Asst. U. S. Atty., Anti-Trust Division, New York City, for plaintiff.

Goldstein & Peck, by Jacob Zeldes, Bridgeport, Conn., for defendant Gershon Hiller.

Wiggin & Dana, by John Fassett, New Haven, Conn., for defendant Nathan Kasowitz.

Bailey, Wechsler, Shea & Michelson, by James Kennelly, Hartford, Conn., for defendants Connecticut Package Stores Assn., Inc. and New Haven Package Stores Assn.

James O'Connor Shea, New Haven, Conn., for defendant John Cozzolino.

Wallace Burke, Hartford, Conn., for defendant Joseph Saltzman.

Cooney & Scully, by John Scully, Hartford, Conn., for the defendants Anthony Chiaramonte and Leo Wilensky.

BLUMENFELD, District Judge:

The defendants move to dismiss an indictment. The Connecticut Package Stores Association, Inc., New Haven Package Stores Association, and six individuals have been indicted by the Grand Jury for having conspired and combined to fix and maintain the retail prices of alcoholic beverages sold in package stores by raising and fixing retail markups and margins of profit through coercion and intimidation of wholesalers and manufacturers in violation of § 1 of the Sherman Act (15 U.S.C.A. § 1). A separate count of the indictment charges that each of the six individual defendant package store operators, while acting as an officer of the state association, violated § 14 of the Clayton Act (15 U.S.C.A. § 24).

The defendants do not challenge the sufficiency of the indictment to charge offenses against the laws of the United States. Their claim is that the offenses charged cannot reach them because the power of the State of Connecticut to control liquor sales within its boundaries granted by the Twenty-first Amendment to the Constitution makes the Sherman Act inapplicable.

There is no need for any extended analysis of the constitutional effect of the Twenty-first Amendment to permit a state, in the exercise of control over the sale of intoxicating liquors, to limit a prosecution under the Sherman Act. Whether a conflict which reveals a clear repugnancy between state law and the prohibitions contained in the Sherman Act, as suggested in Mr. Justice Black's opinion for the court, United States v. Frankfort Distilleries, 324 U.S. 293, 299, 65 S.Ct. 661, 89 L.Ed. 951 (1945), would lift the ban of the antitrust laws in favor of package store owners or whether "the validity of a charge under the Sherman Law relating to intoxicating liquors depends [only] upon the utilization by a state of its constitutional power under the Twenty-first Amendment", as stated by Mr. Justice Frankfurter in his concurring opinion in United States v. Frankfort Distilleries, pp. 300–301, 65 S.Ct. p. 665, has not yet been decided by any court; and I find no necessity for

deciding that question in this case.[1] Since the defendants urge the adoption of the latter view, this case will be considered on that basis. Mr. Justice Frankfurter teaches the way to test the issue as he has formulated it:

"Thus the question in this case, as I see it, is whether in fact the policy of Connecticut [Colorado] sanctions such an arrangement as the indictment charges. Such a policy may be expressed either formally by legislation or by implied permission. Unless state policy is voiced either by legislation or by state court decisions, it is precarious business for an outsider to be confident about the legal policy of a State."

The risk attached to a determination of the legal policy of Connecticut has been alleviated by its enacted laws, enlightened by judicial decisions of its courts explaining their purpose, scheme and scope, all of which have been ably presented in the comprehensive briefs of counsel.

The indictment charges a conspiracy to coerce, intimidate and boycott wholesalers and interstate shippers to fix prices in order that the defendants might gain their desired resale markups.

Apart from a Fair Trade Law (Conn. Gen.Stat., § 42–110, Rev. of 1958), applicable to all retail sales, the Connecticut Liquor Control Act (§ 30–1 et seq.), as amended, contains special provisions for resale price maintenance or "fair trading" of intoxicating liquor (§ 30–63;64). These provisions, aided by regulations of the Liquor Control Commission, require wholesalers and out-of-state shippers to post and abide by wholesale prices fixed by each of them, and to fix and post the minimum consumer resale prices below which the package store permittees are forbidden to sell to the consumer. Thus, the wholesaler or shipper, as the case may be, is the one who establishes the minimum price below which a retailer may not resell. The scheme of the law in this respect has been summarized by Judge Inglis in Schwartz v. Kelly, 140 Conn. 176, at 181, 99 A.2d 89, 92, app. dis. 346 U.S. 891, 74 S.Ct. 227, 98 L.Ed. 394 (1953), "* * * the General Assembly has, in this instance, adopted the method of permitting wholesalers to fix minimum prices at which each brand of liquor may be sold at retail." In the main, the conspiracy charged is one that unlawfully coerced the wholesalers to fix their prices according to the wish of the defendants. Connecticut law does not regulate the power of the wholesaler to post whatever price he decides upon as the wholesale price or the minimum resale price. It only requires that once the prices are posted they shall be observed.

In the lower court's decision in Schwartz v. Kelley, 18 Conn.Sup. 59 (1952), aff'd sub. nom. Schwartz v. Kelly, 140 Conn. 176, 99 A.2d 89, where the constitutionality of the Liquor Control Act was challenged, inter alia, on the ground that it delegated legislative power to wholesalers to fix prices, the scheme and purpose of the Liquor Control Act was examined and explained so fully as to leave no doubt about the law or the policy of the state. So far as the power to fix prices is concerned, Judge Mellitz said, p. 66:

"The law here delegates nothing. To neither the liquor control commission or anyone else does the legislature delegate the power to classify liquor into types or grades and set minimum prices for each * *"

And on this point, the Supreme Court of Errors said:

"In filing the schedule of minimum retail prices to be charged for their liquor, they (wholesalers) are not

<hr/>

[1]. Resolution of a constitutional question by a district court should be avoided if possible. Ashwander v. T. V. A., 297 U.S. 288, 347, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (concurring opinion). No authority has been furnished to support the argument that a doctrine of "reverse preemption" should be applied. Neither opinion in the Frankfort Distilleries case (supra) suggests that the area lies beyond the realm of federal power where it has been left wholly unoccupied by the state.

legislating. They are merely complying with the law enacted by the General Assembly. Their fixing of prices, by itself, does not have the force of law. It is the General Assembly that has directed that retailers shall not sell for less than the established prices * * *. The act under consideration does not come into operation by virtue of any agreement or combination among individuals. It is the act of each individual wholesaler acting independently which determines the minimum price to be charged by the retailers for his brand of liquor."

So far as permitting agreements to fix prices or enter into horizontal resale arrangements affecting competition between brands contrary to the prohibition of the Sherman Act, Judge Mellitz said, p. 65:

"Nothing in the legislation here sanctions combinations between dealers to fix prices or to enter into horizontal resale price agreements in contravention of the Sherman Act. The evils apprehended by the plaintiffs as the consequence of the legislation will require the future attention of the legislature if and when such consequences become manifest, but until the operation of the law establishes the contrary, the legislature has the right to anticipate that free and open competition between the elements of the liquor industry in whom the power resides under the law to fix resale prices will accomplish the ends sought by the legislature."

and at p. 66 said:

"Here the law requires, through a system of price posting, that a given brand of liquor be sold at a uniform price throughout the state. Liquor which is chemically identical may be sold at different prices provided it is sold under different brand names. Competition between brands is in no way affected or controlled by the law, nor is there any sanction for lessening of competition through concerted action or otherwise."

■ I find nothing in the laws of the State of Connecticut or in the judicial decisions of its courts to support the view that commerce in intoxicating liquors which the Sherman Act makes illegal is within the ambit of state policy. Instead of defeating the policy of the state, application of the safeguards set up by the Sherman Act aids that policy.[2]

■ The New Haven Package Stores Association asserts an additional ground in support of its motion to dismiss the indictment, asserting that it is a division or sub-section of the Connecticut Package Stores Association, a co-defendant, that it is not a person within the ambit of the Sherman Act, and "not a competent party defendant in prosecution" under the same Act. The Sherman Act (15 U.S.C.A. § 1–7), in clear language, attaches criminal liability to "every person" who violates it. Section 8 (15 U.S.C.A. § 7) defines the word "person" as follows:

"The word 'person' or 'persons', wherever used in Sections 1–7 of this title shall be deemed to include corporations and associations existing under or authorized by the laws of either the United States, the laws of any of the Territories, the laws of any State, or the laws of any foreign country."

This language has been held sufficiently broad to include unincorporated associations. United States v. Greater New

2. No reliance has been placed on several cases in other jurisdictions which have uniformly upheld anti-trust prosecutions involving liquor traffic because the liquor laws in those cases varied considerably from the Connecticut law. Cf. United States v. Frankfort Distilleries (supra); United States v. Erie County Malt Beverage Distributors Ass'n, 3 Cir., 1959, 264 F.2d 731; Washington Brewers Institute, Inc. v. United States, 9 Cir., 1943, 137 F.2d 964; United States v. Maryland State Licensed Beverage Ass'n, D.C.Md., 1956, 138 F.Supp. 685, aff'd sub. nom. Melrose Distillers v. United States, 4 Cir., 1958, 258 F.2d 726.

York Live Poultry Chamber of Commerce, D.C.S.D.N.Y., 1928, 30 F.2d 939.

Under Connecticut's laws, an unincorporated association exists for the purpose of prosecuting or defending proceedings at law. Conn.Gen.Stat., § 52–76 (Rev. of 1958). The New Haven Package Stores Association is sufficiently alleged to be a person who may be made a defendant in this case.

The motions of the defendants to dismiss the indictment are denied.